UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MOHAMMED SOLIMAN,                                                            14-cv-5951 (DLI) (RER)

                Plaintiff,

            - against -

MAERSK LINE LIMITED and the vessel M.V. Maersk
Idaho, Official No. 1217920, her engines, tackle gear,
cargo and appurtenances, etc. in Rem,

                Defendants.

------------------------------------------------------------------------x


## DEFENDANT'S POST-TRIAL REPLY BRIEF


FREEHILL HOGAN & MAHAR LLP
*Attorneys for Defendant*
*Maersk Line Limited*
80 Pine Street, 25th Floor
New York, New York 10005-1759
Telephone: (212) 425-1900
Facsimile: (212) 425-1901
Walsh@Freehill.com

John J. Walsh
William Yost
 Of Counsel

459400.1

# TABLE OF CONTENTS

I. PLAINTIFF'S COMPARATIVE NEGLIGENCE CAUSED HIS INJURY, ESPECIALLY UNDER THE RELAXED STANDARD APPLIED IN JONES ACT CLAIMS................. ...............................3

II. CASE LAW SUPPORTS A FINDING THAT PLAINTIFF WAS MORE THAN 50% COMPARATIVELY NEGLIGENT ........................... 7

III. PLAINTIFF HAS FAILED TO PROVE THE MAERSK IDAHO WAS UNSEAWORTHY ................................................................................ 9

459400.1

I.  **PLAINTIFF'S COMPARATIVE NEGLIGENCE CAUSED HIS INJURY, ESPECIALLY UNDER THE RELAXED STANDARD APPLIED IN JONES ACT CLAIMS.**

In ascertaining employee comparative negligence, the Court must apply the same relaxed standard of causation that is used for employer negligence. *See Norfolk Southern Ry. Co. v. Sorrell*, 127 S. Ct. 799, 808 (U.S. 2007); *CSX Trans., Inc. v. McBride*, 131 S. Ct. 2630, 2643 (U.S. 2011); *see also Harrington v. Atl. Sounding Co.*, 916 F.Supp.2d 313 at n. 2 (E.D.N.Y. 2013), *aff'd in part, vacated in part on other grounds, Marasa v. Atl. Sounding Co.*, 557 Fed. Appx. 14 (2d Cir. 2014) ("[t]he relaxed standard of causation under the Jones Act also applies in the context of comparative negligence")[1]; *Wisowaty v. Port Auth. Trans-Hudson Corp.*, 2012 U.S. Dist. LEXIS 162811 (D. N.J. 2012) ("[i]n ascertaining employee contributory negligence, the Court is bound by the standard used for employer negligence—whether the employee is responsible for his own injuries 'in whole or in part'"). Thus, any negligence, no matter how slight the connection to the injury is grounds for a finding of comparative negligence.

When this relaxed standard of causation for employee comparative negligence is applied, the inescapable conclusion is that Plaintiff's own negligent conduct was the primary cause of his injury. Plaintiff's failure to attend the Safety in Motion Seminar was certainly unreasonable

---

[1] Defendant argued in its opening brief here that the "relaxed standard" of negligence pronounced by *Williams v. Long Island R.R.*, 196 F.3d 402 (2d Cir. 1999) was implicitly overruled by the U.S. Supreme Court in *CSX Trans., Inc. v. McBride, supra.* The Second Circuit in *Marasa v. Atl. Sounding Co. supra.*, recognized that argument, but found it moot, because the District Court found the defendant guilty of ordinary negligence. 557 Fed Appx. at 16.

conduct on his part. Surely, he was aware of the subject of the seminar and chose not to do it, because they were "going to have fun." Tr. at 116-118.

Even if he had no idea of the subject of the seminar, he had to know that Maersk would not be giving him an all expenses paid trip to a seminar just for him to have fun. Turning down an all expenses paid educational seminar which helps you do your job is unreasonable, unless there is some very good excuse for not attending. Yet, he furnished none, except that he did not want to have "fun."

And in keeping with the "no matter how slight the causation" standard of the Jones Act, applicable to comparative negligence, *Norfolk Southern Ry. Co. v. Sorrell supra.,* there is a strong connection between the failure to attend the Seminar and the injury. Defendant's Exhibit "D" demonstrates the topics covered including the effects of aging, end-range motions, positioning elbows closer, sliding the load, carrying weight on the arm or shoulder and reaching high. Indeed, one "stressed-better" photo in Exhibit "D" illustrates how a mariner, doing much the same thing as Soliman did, might reach for the bottom of a bag, rather than the top. Mr. Soliman, a veteran seaman and self-proclaimed safety expert, was obviously dismissive when it came to learning new safety techniques and declined to heed Maersk's attempts to re-train him on proper lifting techniques. (*See id.* at p. 180-181). Use of techniques he could have learned at the seminar would have prevented his injury.[2]

Plaintiff contends he should not be found comparatively negligent for handling the bags with one hand, especially where he did not deviate from the general practice on the ship. As the Court has already recognized, there "was nothing preventing him from using two hands to grab

---

[2] Ironically, plaintiff criticizes the MAERSK IDAHO for not carrying out the procedures covered in the seminar. Plaintiff's Post Trial Submissions at 22. But the whole point of the seminar is to provide training that could not be performed on the job as there simply is insufficient time.

4

459400.1

each bag, turn his body around and put the bag into the net." (Tr. at p. 566, l. 7-9) Captain Stoller offered no testimony to the contrary and conceded the point that nothing prevented Mr. Soliman from using two hands. (*Id.* at p. 249, l. 7-17) Yet Plaintiff's argument that one handed use fell within the dictates of ordinary care backs Plaintiff into a corner. Plaintiff cannot argue that the ship was negligent for using one hand switching of garbage bags to the cargo net, but that he is not negligent for following the very same practice for thirty years. There is no evidence that he was told to use only one hand; he did so on his own. If the officers were negligent for using one hand, so was he. If he was not negligent, neither were they[3]. Certainly, there is no evidence that he was not adequately trained, especially when he boasted that he knew his job better than the captain knew his job.

Moreover, Plaintiff's argument proves the seaworthiness of the ship. According to plaintiff, he was not negligent because all of the officers testified that was the way they always did the job. If past practice of always doing something is evidence of seaworthiness, then stacking the bags for later disposal into the net was not an unseaworthy condition, because the officers all testified that is the way they have always done it, a point supported by plaintiff. Plaintiff cannot have it both ways.[4]

---

[3] Plaintiff miscites Stoller's testimony in arguing that "[lateral pulling] tasks should not be assigned." Plaintiff's Post Trial Submissions at 25. Stoller's testimony is exactly the opposite:
"Q.    Are you testifying that lateral pulls are not -- can't be done ever?
THE WITNESS: No, they can be done when you're, like, pulling in a line, a mooring line. When you have people using your back, using your legs, no, I'm not saying that."
Tr. at 260. Thus, there are no rules or standards against stacking or against lateral pulls.

[4] Plaintiff suggested that the garbage bags could have been placed directly in the net at 3:00 PM in the afternoon, leaving bags blocking the passageway for 4 plus hours. Plaintiff should not be able to argue that the ship should have created an unseaworthy condition to avoid his injury, only to create the risk of another injury. Avoidance of the more serious condition blocking the passageway and creating a tripping hazard makes stacking the bags under the ladder reasonable and hence seaworthy.

The evidence also strongly suggests Mr. Soliman was working with pain and injury in his left shoulder at the time of the subject accident, and that he failed to advise Captain Willers of his potential physical restrictions. (*Id.* at p. 154; Ex. H)[5] It is not too difficult to infer that he was favoring the right shoulder in pulling mooring lines and other heavy work before disposing of the garbage bags. Moreover, as Dr. Cuomo noted, rotator cuff tears often are bilateral, meaning they can occur in both shoulders which suggests a significant preexisting condition in the right shoulder.

Plaintiff's reliance on *Rivera v. Farrell Inc*, 474 F.2d 255 (2d Cir. 1973), an opinion by Judge Oakes, does not upset a finding of comparative negligence. A messman while attempting to retrieve some ice cream from a pantry in the mess hall fell on a slippery wet floor due to a leak from the overhead. "The condition had *often* been reported to the ship's officers but had gone uncorrected." *Id.* at 256 (emphasis added). According to the Court, to find comparative negligence, it was not enough to show that the seaman had knowledge of the condition; that merely proved assumption of risk, which is not a defense under the Jones Act. "Evidence of an act of negligence other than appellant's knowledge of the dangerous condition in the pantry was not, though it should have been, required by the court's charge in this case." *Id.* at 258. The Court remanded the case for a new trial to ascertain if there was any act of negligence in addition to knowledge of the defective condition.[6]

---

[5] Soliman insists that he was taken to the physician against his wishes and pursuant to the order of the Master, but after X Rays, the physician made some objective findings of osteoarthritis in his left shoulder which suggests that Soliman had some structural defects in the left shoulder which he did not want to complain about for fear of losing his job. *See* Defendant's Exhibit H.

[6] The Court discussed other theories of a comparative negligence concluding that, at trial, the "alternate route" theory and the failure to mop the floor defense were not argued and that failure to notify superiors was futile as a defense due to the numerous previous attempts at notification. *Id.* at 258-59.

459400.1

The proof here goes beyond *Rivera*. If there was a dangerous or defective condition – which Defendant denies—it was not Soliman's knowledge of the condition which made him comparatively negligent; it was the method in which he encountered the condition, namely using one hand to stretch his arm out and pull the bag. And, more remotely but still causatively under the Jones Act, his failure to attend a Safety Seminar which would have given him new techniques to safely remove the bag from the pile, and, not to be overlooked, was his working while compensating for a left shoulder injury.

## II.   CASE LAW SUPPORTS A FINDING THAT PLAINTIFF WAS MORE THAN 50% COMPARATIVELY NEGLIGENT.

In *Burden v. Evansville Materials, Inc.*, 840 F.2d 343 (6th Cir. 1988), the plaintiff deckhand was tasked with moving two waist-high piles of coiled towing cables (each weighing nearly 100 pounds) from the deck of a tug to an adjacent barge. When he encountered a snagged coil from the pile, he attempted to lift and carry it without assistance and strained his back as a result. The court specifically found the vessel was unseaworthy because some of the cables had shackles attached which caused the cables to snag together (leading to plaintiff's injury), and that standard procedure dictated the shackles be stripped from the cables before they were coiled, which had not been completed. Nevertheless, the court found (and the Sixth Circuit affirmed) that plaintiff was 80% contributorily negligent for his own injury because he had authority, yet neglected, to request assistance from other crewmembers with lifting the cables and because he failed to utilize the proper method for carrying the cables.

None of the facts from *Burden* can be distinguished in Mr. Soliman's favor. First, there was no finding that tasking Mr. Burden with lifting, carrying, and moving 100 pound coils was unreasonable. It was up to Mr. Burden to seek assistance if he determined that he could not complete the task alone. Second, there was evidence (not merely speculation, as here)

7

demonstrating that the coils snagged because of the negligent acts and omissions of the crew and that the snagging of the coils directly contributed to Mr. Burden's injury. Here, there is no evidence beyond the mere happening of the accident to demonstrate that the subject garbage bag got snagged. Because there is no such evidence, there can be no finding that the bag got snagged because of the negligent acts or omissions of the crew. Finally, like Burden, Soliman has been trained on proper lifting techniques and has been instructed to ask for assistance whenever he encountered an object too heavy to lift. (Tr. at p. 150, l. 13-18) Accordingly, a finding of 80% comparative negligence on the part of Mr. Soliman should be deemed appropriate.

In addition, in *American President Lines, Ltd. v. Welch*, 377 F.2d 501 (9th Cir. 1967), plaintiff, an engineer, was tasked with dismantling a lube oil pump and carrying its two pistons (each weighing in excess of 100 pounds) and crosshead (weighing 42 pounds) to the ship's machine shop, which required him to ascend a ten step ladder. Although he was authorized to request assistance, he attempted to complete the task by himself and strained his back in the process. The district court found the subject task was a two-man job, that it was dangerous for one man to complete it, and that the vessel was therefore improperly manned as a matter of law. Nevertheless, the Ninth Circuit affirmed that lower court's finding that plaintiff was 50% contributorily negligent for failing to ask for assistance.

Based on *Burden* and *Welch*, it is evident that the law imposes on seamen a duty to execute their tasks with reasonable care to prevent injury, not only to themselves but to others. It is also incumbent upon a seaman to request assistance when he is tasked with a job that he cannot complete on his own. Here, it is evident that Mr. Soliman's injury resulted from his failure to take reasonable care to prevent injury. If he had acted with reasonable prudence, he would have handled the garbage bags with two hands and would have been able to determine if

he required assistance to move a particular bag. Instead, the evidence indicates Mr. Soliman acted hastily and failed to exercise reasonable caution to prevent injury. A finding of contributory negligence of 50% - 80% is therefore warranted.

### III. PLAINTIFF HAS FAILED TO PROVE THE MAERSK IDAHO WAS UNSEAWORTHY.

To prevail on a claim for unseaworthiness, plaintiff must prove that a vessel was defectively or insufficiently equipped, such that "unseaworthiness played a *substantial part* in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Lisowski v. Reinauer Transp. Co.*, 2009 U.S. Dist. LEXIS 23429, at * 38-39 (E.D.N.Y. 2009) (emphasis added). The vessel need not be perfect, but reasonably suited for her intended service. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (U.S. 1960); *see also Oxley v. City of New York*, 923 F.2d 22, 24 (2d Cir. 1991). The standard of causation for unseaworthiness is more strict than for a Jones Act claim of negligence and requires a showing of proximate cause in the traditional sense. *Saleh v. United States*, 849 F. Supp. 886, 894-95 (S.D.N.Y. 1994).

"Although the doctrine of unseaworthiness entails liability without fault, there must still be a defect in the vessel." *Hughes v. ContiCarriers & Terminals, Inc.*, 6 F.3d 1195, 1197 (7th Cir. 1993). Plaintiff relies on the case of *Rodriguez v. Coastal Ship Corp.*, 210 F. Supp. 38 (S.D.N.Y. 1962) to support its unseaworthiness claim and to counter Maersk's argument that the use of "A" deck for staging garbage bags was the only reasonable procedure available at the Port of Algeciras under the circumstances presented.[7] In *Rodriguez*, a longshoreman (not a seaman)[8]

---

[7] Plaintiff also cites *Dennis v. Central Gulf SS Co.*, 453 F.2d 137 (5th Cir. 1972) for the proposition that industry-wide deficiencies are not a defense. However, that case lacks relevance on this point as it concerned negligence, not unseaworthiness.

[8] In light of *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 165 (U.S. 1981), *Rodriguez* is arguably not good law, anyway, as the Supreme Court in *Scindia* recognized that the 1972 Amendments to the Longshore

alleged the subject containership was unseaworthy where gantry cranes, which had been fashioned to the ship, leaked oil onto the deck, leading to plaintiff's injury. Although the court found the oil spillage problem could not be easily rectified, the crane caused an open and obvious hazard which prevented plaintiff from performing his tasks with reasonable safety and, therefore, rendered the ship unseaworthy.

*Rodriguez* involved a defect which was a dangerous condition: people can slip and fall on oil on the deck. The Court strains credulity here by finding a defect in the neat stows of garbage bags out of the way under a ladder. Everyone can slip on oil on the deck; not everyone can tear their rotator cuffs pulling garbage bags from a pile. In fact, Soliman is the first – and for a reason—his rotator cuff had been previously severely compromised

Other than the stern, Plaintiff points to no other place where this garbage could have been staged. But the stern does not provide the answer. Indeed, at certain ports other than Algeciras, garbage could be tossed from the stern mooring deck to a barge below. (*See* Tr. at p. 180, l. 19-21) However, as acknowledged by Mr. Soliman, due to the restrictions at the Port of Algeciras garbage could not be discharged from the stern, thereby requiring the staging of the bag on "A" deck and the use of the ship's crane to lower the garbage to the pier. *Id.* It is undisputed that the stern had no crane. The ship is 30 feet high off the water. Garbage bags could not have been thrown to the dock at Algeciras from the stern at that height. Nor could they have been walked down the gangway considering the amount of bags and the time they had to do cargo operations. The "A" deck was the only place the bags could be stowed.

Unlike the situation in *Rodriguez*, there is no aspect of the MAERSK IDAHO that created an open and obvious hazard. The task of disposing garbage in the manner performed had

---

Harbor Workers Compensation Act abolished a longshoreman's right to recover against the vessel for unseaworthiness, although it permitted a longshoreman to recover against a vessel owner for negligence.

been accomplished without incident hundreds of times and Mr. Soliman testified that he completed this task numerous times without injury, both while aboard the MAERSK IDAHO and other containerships. (*Id.* at p. 197, l. 21-25; p. 198, 3-9)   Therefore, this Court should conclude that the MAERSK IDAHO was "reasonably suited" for its intended service, including to allow for the safe gathering and disposal of garbage bags to the pier.

Finally, Plaintiff has not even attempted to demonstrate that his injury was a foreseeable result of an unseaworthy condition.[9] It stretches credulity to argue that the configuration of the MAERSK IDAHO was the *proximate cause* of Mr. Soliman's injury. *See generally, Saleh,* 849 F. Supp. at 895 (S.D.N.Y. 1994) (the injury must be "either a direct result or a reasonably probable consequence of the unseaworthiness"). Mr. Soliman's shoulder tear simply did not result directly from the need to stage the garbage bags on "A" deck in light of the requirements at the Port of Algeciras.

Dated:   New York, New York
         November 28, 2016

                                            Respectfully submitted,
                                            FREEHILL HOGAN & MAHAR LLP
                                            *Attorneys for Defendant Maersk Line Limited*

                                            By: _____
                                                John J. Walsh
                                                80 Pine Street, 25th Floor
                                                New York, New York 10005-1759
                                                Telephone:  (212) 425-1900
                                                Facsimile:  (212) 425-1901

---

[9] Plaintiff incorrectly cites Captain Stoller's testimony for the proposition that "the methods used to stack and arrange the garbage bags and the methods used in the garbage room prevented usage of relevant safe work practices which are set forth in the Maersk Pocket Safety Handbook." Plaintiff's Post Trial Submissions (D.E. 37) at 24. Stoller never mentions stacking in his testimony. No manual, guideline, rule or regulation prohibits stacking.

TO:    Ralph J. Mellusi, Esq.
         Tabak, Mellusi & Shisha
         Attorney for Plaintiff
         29 Broadway
         New York, New York  10006